Sargent and a.
*vs.*
Gile and a.

## SARGENT and a. *vs.* GILE and a.

Where one receives goods upon a contract, by which he is to keep them a certain period, and if in that time he pays for them he is to become the owner, but otherwise he is to pay for the use of them, he receives them as a bailee, and the property of the goods is not changed until the price is paid.

If a bailee for hire, for a limited period, sell the goods before the expiration of the term, the bailment is thereby ended; and the owner may maintain trover, if the vendee refuses to deliver them up on demand. And it will not alter the case, if the bailee had, by his contract, a right to purchase the goods within the term, by paying a certain price.

Where one who had purchased goods of a person who had no right to sell, upon a demand by the owner, said he should not deliver them up at present, having bought them of the vendor, supposing them to be his,—and afterwards held the goods for the space of seven days without offering to return them, *held*, that this was sufficient evidence of a conversion.

TROVER, for sundry articles of household furniture.

Sargent & a.
vs.
Clle & a.

Upon the trial, in the common pleas, a verdict was directed for the plaintiffs, subject to be set aside and a new trial granted, if, in the opinion of this court, the action could not be sustained upon the following facts.

On the 14th of June, 1834, the plaintiffs delivered the furniture to one Levi Wilson, upon a contract that he should keep it six months, and if, within that time, he paid for it, he was to have it at cost, but otherwise he was to pay twenty-five per cent. upon the cost for the use of it.

On the 17th June, said Wilson sold and delivered the same furniture to the defendants, who knew nothing of the contract upon which Wilson had received it.

On the same day the plaintiffs demanded the property of the defendants, who replied that they should not deliver it up at present, and that they bought it of Wilson supposing it to be his.

This action was commenced on the 24th of the same month.

On the 10th of December, the defendants delivered the furniture to the plaintiffs, and tendered payment for the use of it.

*James Bell*, for the defendants, contended,

1. That there was no evidence of a conversion. The defendants had a right to time, to satisfy themselves whether the plaintiffs' claim was well founded.

2. That the plaintiffs had no right of possession. There was a conditional sale to Wilson. He had until the last moment of the six months to elect. If he paid within that time, the property was his, and it is immaterial whether he had sold in the mean time. If the plaintiffs rely upon *Sanborn* vs. *Colman*, 6 *N. H. Rep.* 14, the court there refer to but one case which differs from this. And this may be distinguished from *Sanborn* vs. *Colman*, in which there was no conditional sale. Vide 13 *Pick. Rep.* 294, *Vincent* vs. *Cornell.*

He cited, also, 7 *D. & E.* 9, *Gordon* vs. *Harper*; *Ryan & Moody* 99, *Pain* vs. *Whitaker*; 3 *Pick. Rep.* 255, *Wheeler* vs. *Train*; 8 *Johns.* 432, *Putnam* vs. *Wiley.*

*Sargent & a. vs. Gile & a.*

*Sullivan*, for the plaintiff, contended that the doctrine of *Vincent* vs. *Cornell*, 13 *Pick.* 294, could not be sustained.

He cited 2 *Campbell* 335; 2 *Stark. Rep.* 311; 9 *Pick.* 156; 5 *Barn. & Ald.* 826; 2 *Salk.* 655; *Story on Bail.* 262, *sect.* 396; 17 *Mass. R.* 606; 4 *Mass.* 405; *Long on Sales* 109.

PARKER, J. In *Vincent* vs. *Pardon Cornell*, 13 *Pick.* 294, the plaintiff, in February, exchanged oxen with William Cornell, under an agreement that he should pay the plaintiff a certain sum by the 7th of May following; and it was agreed, in order to secure the plaintiff, that Cornell should keep the oxen until the 7th of May, and return them at that time, unless the sum was paid; but if the money was paid, the plaintiff was to release his right to them.

Before the time, William Cornell sold them to the defendant, and the defendant to one Tripp, and after the 7th of May the plaintiff demanded them of the defendant, and brought trover. The court held that the agreement amounted to a conditional sale—that William Cornell had, therefore, a right to dispose of the possession, with his right, such as it was—that the plaintiff had no possession, or right of possession, and that the taking by the defendant, and his sale to Tripp, did not therefore amount to a conversion. Mr. Justice Wilde said it had been argued, that the sale by William Cornell was such a breach of trust as to terminate the bailment, and to restore to the plaintiff a right of possession, but the argument could not be sustained.

Were we to adopt all the conclusions in that case, this action must fail. But in *Sanborn* vs. *Colman*, 6 *N. H. Rep.* 14, where the plaintiff, being the owner of a mare, had let her, on the 1st February, 1830, for hire, to Brown, for four

weeks, and Brown sold her within five days afterwards, to the defendant; and the plaintiff demanded her, within the four weeks, of the defendant, who refused to deliver her,—this court held that the sale of the mare put an end to the contract between Brown and the plaintiff, and that the plaintiff might maintain trover.

We have re-considered that case, and are satisfied with the decision. Unless, therefore, the fact, that by the original contract between these plaintiffs and Wilson, the latter had a right to pay for the furniture within the six months, changes the nature of the case, we must hold that this action is well sustained, and we are all of opinion that this does not affect the principle.

It has been held, that where one receives goods and chattels of another, on a contract by which he has a right to return them or pay a stipulated price, or a right to return them or other goods, the property passes, and he is regarded a purchaser. 3 *Mason's Rep.* 478, *Buffum* vs. *Merry; Story on Bailment* 286 ; 1 *Fair. Rep.* 31, *Holbrook* vs. *Armstrong ;* 7 *Cowen* 752, *Hurd* vs. *West ;* 2 *Kent's Com.* 463. If that be so, Wilson in this case had no option to return any other furniture, and there was an express stipulation that the property should not be his until the price was paid. He cannot be regarded as a purchaser against the express agreement of the parties, and it is not contended that the property had passed. 4 *Mass.* 405, *Hussey* vs. *Thornton ;* 17 *Mass.* 606, *Marston* vs. *Baldwin.* He was a bailee for hire, for a certain time, with a right to purchase, if within that time he paid the price. This he had not done when he sold ; and the contract by which he gained the right to purchase conferred on him no right to sell, nor in any manner enlarged his right as bailee. The goods still remained the property of the plaintiffs. When, therefore, he undertook to sell, and delivered the plaintiff's goods to others, in violation of any right which he then had, or, for aught which appeared, ever would have, he forfeited the

right to hold and use, and waived all benefit of it, having voluntarily deprived himself of that right—and the defendants could gain no right of possession, because Wilson had no power to communicate any such right to them. He had no interest which he could sell. 6 *Green. Rep.* 205.

These principles seem to be sound in themselves, and the authorities appear fully to sustain them.

In *Farrant* vs. *Thompson*, 5 *B. & Ald.* 826, where certain mill machinery, together with a mill, had been demised for a term to a tenant, and he, without permission of his landlord, severed the machinery from the mill, and it was afterwards seized under a *fieri facias* by the sheriff, and sold by him, it was held that no property passed to the vendee, and that the landlord was entitled to bring trover for the machinery, even during the continuance of the term. The court took a distinction between that case and *Gordon* vs. *Harper*, 7 *D. & E.* 9, that in the latter case the goods removed were personal chattels, and the tenant had not by any wrongful act put an end to his qualified possession of them ; and on this ground *Pain* vs. *Whitaker, Ryan & Moody* 99, in no way conflicts with *Farrant* vs. *Thompson.*

In *Wilkinson* vs. *King*, 2 *Camp.* 335, the owner of goods sent them to a wharf where goods of the same sort were usually sold. The wharfinger, without any authority, sold them to a *bona fide* purchaser, who duly paid for them. Held, that the sale did not change the property, and that the owner might maintain trover against the purchaser.

In *Loeschman* vs. *Machin*, 2 *Stark. Rep.* 311, where Brown, who had hired a piano of the plaintiff, sent it to the defendant to be sold by auction, and the defendant, on the plaintiff's application, refused to deliver it—held, that he was liable in trover.

In *Samuel* vs. *Morris*, 6 *Car. & Payne* 620, the plaintiff had pledged certain goods to one James, to secure the payment of a debt. Mr Baron Park said, if James had sold the

goods it would have been such a wrongful act, and so inconsistent with the bailment, as to have immediately re-vested the right of possession in the bailor.

In *Emerson* vs. *Fisk*, 6 *Green.* 200, where Michael & Alexander had made a contract with the plaintiff to cut certain pine timber, to transport one fourth to a certain place for the owner, and to transport the other three fourths to the same place, and agreed that the plaintiff should retain the ownership until satisfied that the quarter part first named was of an average quality with the whole, and until he was paid all debts due to him from M. & A., &c., and they sold their interest to the defendants, and the plaintiff replevied the logs while *in transitu*,—it was held, that the contractors had no authority to sell the logs—that if they had a special property, it was only as bailees for a special purpose—that the sale was entirely inconsistent with the rights of the plaintiff, as general owner—that by this unauthorized act the bailment, and their authority under it, was determined, and that the defendants could derive no rights from the tortious act of Michael & Alexander.

And in *Galvin* vs. *Bacon*, 2 *Fairfield* 28, the plaintiff, being the owner of a horse, bailed him to A, for use for a limited period, under the expectation of a purchase by the latter; and during the time, A, for a valuable consideration, and without notice, sold the horse to B, and he in like manner to the defendant. It was held, that no previous demand was necessary, to enable the owner to maintain replevin against the last purchaser.

So in *Williams* vs. *Merle*, 11 *Wend. Rep.* 80, it was held that a general purchaser of personal property is not protected against the claim of the true owner, although he purchased in good faith and for a valuable consideration, if the vendor has no title or authority to sell. And in this last case it was farther held, that a broker was not protected against such claim, although he purchase in the regular

course of his business in good faith, for a fair price, and disposes of the property pursuant to the instructions of his principal before suit brought.

The plaintiff being the owner of the goods, and having a right of possession, the only remaining question is, Does the case show a conversion by the defendants?

In *Robinson* vs. *Burleigh,* 5 *N. H. Rep.* 225, it was held that a refusal to deliver goods when demanded is only evidence of a conversion, and when such refusal may be considered only as the result of a reasonable hesitation, in a doubtful matter, it is not sufficient evidence to prove a conversion. And this decision has been followed in subsequent cases. *Fletcher* vs. *Fletcher,* 7 *N. H. Rep.* 452. *Vide, also,* 3 *Stark. Ev.* 1499; 5 *B. & Ald.* 247, *Alexander* vs. *Southey.*

But in this case, all the defendants could require was time to examine into the right of the plaintiffs; and ample time appears to have been given for such examination, before this action was commenced. It was not necessary for the plaintiffs to make another demand. They were only bound to wait a reasonable time before commencing their suit, to give the defendants an opportunity to enquire and comply; and the plaintiffs having done this, the demand and refusal, and subsequent neglect, are sufficient evidence of a conversion.

It is not material, therefore, to enquire whether the action might not have been sustained without any demand. 2 *Fair. R.* 30.

*Judgment for the plaintiffs.*